**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>JOSEPH D. MASSA and<br>RONDA E. MASSA,<br><br>  Debtors. | Case No. 18-17322 KHT<br>Chapter 7 |
| PROFORCE STAFFING, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>JOSEPH D. MASSA and<br>RONDA E. MASSA,<br><br>  Defendants. | Adversary No. 18-01403 KHT |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came before the Court for trial on the Complaint filed by Plaintiff ProForce Staffing, Inc. ("ProForce") and the Answer filed by Defendants Joseph D. Massa and Ronda E. Massa (together, "Debtors"). At the conclusion of the trial, the Court took the matter under advisement. The Court is now prepared to rule, and hereby finds and concludes as follows:

**I.    JURISDICTION**

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within 28 U.S.C. § 157(b)(2)(I) because it involves a determination as to the dischargeability of Debtors' debt to ProForce.

**II.    FACTUAL BACKGROUND**

Debtor Joseph D. Massa formed JDE, LLC in June of 2009. Mr. Massa was the LLC's sole member and manager. The business focused on low-voltage electrical work, the area of Mr. Massa's expertise. Mr. Massa's wife, Debtor Ronda E. Massa, had no involvement with the LLC.

By 2015, Mr. Massa decided to expand his business beyond low voltage work, to include all electrical work. He dissolved JDE, LLC, and formed JDE, Inc. ("JDE"). Mr. Massa served as JDE's president. He hired a master electrician, Rick Lyons, to serve

as Director of Electrical Operations, with responsibility for running the non-low-voltage electrical projects. Mr. Massa deferred to Mr. Lyons on all aspects of the company's (non-low-voltage) electrical projects.

By 2017, JDE had been retained as a subcontractor on four large electrical projects. Its employees had increased from 6 to 60. In order to provide appropriate staffing on the projects, JDE entered into a contract with ProForce, pursuant to which ProForce provided skilled laborers such as electricians to JDE's construction projects.

JDE struggled to keep up with its growth. Ms. Massa, who was JDE's Vice President, increased her involvement in the company. But, she did not have the financial training or experience needed to manage the company's finances. Both Mr. and Ms. Massa expected JDE's CFO and finance department to manage the finances without the Massas' active involvement.

In March of 2017, JDE's CFO, Joanna Aaron, was relieved of her duties. After Ms. Aaron's departure, Mr. Massa needed help with the company's finances. He turned to his friend Mike Hurdle, a CPA with construction experience, for advice. At first, Mr. Hurdle offered advice to Ms. Aaron's replacement, but that person resigned shortly after she was hired. At Mr. Hurdle's recommendation, JDE hired Trinity Financial to perform financial services for JDE. By April 2017, Mr. Hurdle was actively participating in JDE's financial decisions and serving as JDE's CFO.[1]

Although Mr. and Ms. Massa deferred to Mr. Hurdle and Trinity Financial on JDE financial matters, both were involved with JDE's finances and both were generally aware of JDE's financial situation. Ms. Massa's involvement with JDE included running the weekly payroll (which required her to input employee timesheet information into Quickbooks, generate checks, distribute the checks to the employees), and making bank deposits. She also assisted with pay applications and lien waivers as needed.

Mr. Hurdle recommended JDE obtain financing to help its cash flow, and he assisted with efforts to obtain financing. Mr. Hurdle was familiar with the requirements of Colorado's Mechanics' Lien Trust Fund Statute, which mandates all funds disbursed to a contractor must be held in trust for payment to subcontractors and suppliers on that project. Despite this, during the time Mr. Hurdle served as CFO, JDE failed to comply with those requirements and funds were not maintained in separate, per-project basis accounts.

Mr. Hurdle worked with JDE's contractors as well as its subcontractors and suppliers to facilitate payments. For example, on May 10, 2017, Mr. Hurdle asked a representative of Taylor Kohrs, one of the contractors for whom JDE performed electrical work as a subcontractor, to issue a joint check to JDE and supplier GexPro. The Taylor Kohrs representative asked for more information about the amount owed to the supplier

---

[1] *See* Defendants' Exhibit B (April 14, 2017, email from Mr. Hurdle listing his title as CFO). Mr. Hurdle testified he was merely an unpaid consultant although Mr. Massa testified Mr. Hurdle was paid for his services, perhaps through Trinity Financial. The Court need not determine whether Mr. Hurdle was paid; what is relevant is he served as CFO and participated actively in the company's financial decisions.

and about lien waivers from other subcontractors. Mr. Hurdle responded: "We owe them more than what [sic] owe us." The Taylor Kohrs representative replied Mr. Hurdle had not answered her question, and she forwarded the email to Taylor Kohrs project manager Scott Heasty, who emailed Mr. Massa:

> Please see below. This is not being properly handled.
>
> Give me a call to discuss. We're trying to get you released but it appears vendors have not been released from JDE for prior amounts that we've paid you . . . . That's a problem, [it's] referred to as "trust fund".
>
> I'm certain it will all shake out, but we're at an impasse right now. Give me a call, thanks!

Exhibit 44. Mr. Massa forwarded the email to Mr. Hurdle. Mr. Massa testified he paid little attention to the email and was generally unfamiliar with the requirements of the Trust Fund Statute. Mr. Hurdle testified that after receiving the email, he explained the requirements of the Trust Fund Statute to Mr. and Ms. Massa.

Mr. Hurdle and the Massas worked together to obtain financial projections broken down by specific projects and to obtain financing for JDE on that basis. In July, they believed a bank would provide the needed financing, but that financing fell through at the end of July or beginning of August.

After JDE was unable to obtain financing, Mr. Hurdle assisted with efforts to sell the company. Ultimately, Mr. Hurdle decided to buy the electrical side of the company, with Mr. Massa retaining the low-voltage work with which he was more familiar. Toward that end, Mr. Massa formed JDE Fire and Security, and Mr. Hurdle became the sole owner of JDE. The sale took place in mid-August 2017.

Shortly after the sale to Mr. Hurdle, JDE did not make payroll, and the employees quit leaving JDE's projects incomplete. Subcontractors and suppliers were not paid and the ProForce contract was terminated abruptly leaving ProForce owed $10,313.09 for outstanding invoices on the Vanguard Green Gables Project, for which JDE had been paid $947,905.69, and ProForce owed $91,211.02 for outstanding invoices on the BGE Project,[2] for which JDE had been paid $283,862.85.[3]

The Massas were surprised and frustrated to see JDE shut down, with projects unperformed and subcontractors and suppliers unpaid. They spent months afterward attempting to address the problems.[4] Their reputation suffered, and JDE Fire and

---

[2] Other JDE subcontractors and suppliers remained unpaid on the BGE Project, and some filed liens for which BGE sued JDE, Mr. Hurdle, and Mr. and Ms. Massa in Colorado state court and in this Court. The parties settled the BGE lawsuits.

[3] The Court previously determined these amounts on ProForce's Motion for Summary Judgment. *See Order on Motion for Summary Judgment* (docket #23).

[4] Exhibit 33 references some of Ms. Massa's efforts to obtain payment from Taylor Kohrs to ProForce.

Security was unable to obtain low-voltage electrical projects. By the time Mr. Hurdle came to JDE offices in January 2018 to pick up files, Mr. Hurdle and Mr. Massa were not speaking to each other.

Mr. Hurdle filed a voluntary Chapter 7 bankruptcy petition in April 2018. Mr. and Ms. Massa filed their voluntary Chapter 7 bankruptcy petition in August 2018. ProForce timely filed the above-captioned adversary proceeding against Mr. and Ms. Massa, asserting JDE's failure to hold funds received on the Vanguard Green Gables Project and the BGE Project constitutes a violation of the Trust Fund Statute, for which Mr. and Ms. Massa are personally liable. ProForce further asserts the Massas' debt is nondischargeable under 11 U.S.C. § 523(a)(4),[5] as fraud or defalcation while acting in a fiduciary capacity.

### III. DISCUSSION

Section 523(a)(4) provides a discharge exception for debts obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." ProForce must establish (a) a fiduciary relationship existed between ProForce and each Debtor, and (b) each Debtor committed a defalcation of that fiduciary relationship, acting with the requisite mental state. *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996); *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013). The Court will discuss each element below, mindful that ProForce, as the Plaintiff, bears the burden of proof of each required element, and that "exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997) (applying Section 523(a)(2)(B)).

#### A. Fiduciary Relationship.

Whether a debtor is a fiduciary is a matter of federal law, although state law is relevant to the inquiry. *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996). In the context of Section 523(a)(4), the term "fiduciary" has a narrow meaning and requires either an express trust or a technical trust. *See Horejs v. Steele (In re Steele)*, 292 B.R. 422, 434 (Bankr. D. Colo. 2003).

A technical trust can arise as a result of a state statute imposing specific trust duties with respect to a specific trust *res*. *Griego v. Gonzales (In re Gonzales)*, 483 B.R. 1, 11-12 (Bankr. D.N.M. 2012). ProForce relies on the Trust Fund Statute, Colo. Rev. Stat. § 38-22-127, which has been held to create a trust sufficient to establish a fiduciary relationship for purposes of Section 523(a)(4). *See Fowler & Peth, Inc. v. Regan (In re Regan)*, 477 F.3d 1209, 1211, n.1 (10th Cir. 2007).

In order to impose personal liability under the Trust Fund Statute, the Court must find each Debtor controlled corporate finances and made corporate financial decisions.

---

[5] Future references to sections are to those of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, unless otherwise indicated.

See *Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo. Ct. App. 1988); *Flooring Design Assocs., Inc. v. Novick*, 923 P.2d 216, 221 (Colo. Ct. App. 1995). The Court previously granted summary judgment in favor of ProForce on the issue of whether Mr. Massa had sufficient control over corporate finances and corporate financial decisions to fall within the Trust Fund Statute. *See Order on Motion for Summary Judgment* (docket #23).

Having considered the evidence at trial, the Court now finds Ms. Massa also had sufficient control over corporate finances and corporate financial decisions that she falls within the Trust Fund Statute. She ran payroll, issued and signed checks, signed pay applications, signed lien waivers, worked to collect accounts receivable and pay accounts payable, and worked on budgeting with Mr. Massa, as reflected in her email to Trinity Financial (Exhibit 27). The Court, therefore, finds both Mr. and Ms. Massa had a fiduciary duty to ProForce, under the terms of the Trust Fund Statute, for purposes of Section 523(a)(4).

### B. Defalcation and Mental State.

As the Supreme Court held in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273-74 (2013), a plaintiff asserting nondischargeability under Section 523(a)(4) must establish the defendant acted with a specific mental state, either actual knowledge of wrongdoing, or "reckless conduct of the kind that the criminal law often treats as the equivalent," including actions where the fiduciary "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* (quoting ALI, Model Penal Code § 2.02(2)(c), at 226, and § 2.02 Comment 9, at 248 (1985) (explaining that the Model Penal Code's definition of "knowledge" was designed to include "willful blindness")). The substantial and unjustifiable risk "'must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law abiding person would observe in the actor's situation.'" *Id.* (quoting ALI, Model Penal Code § 2.02(2)(c), at 226). The Court will discuss separately the mental state of Ms. Massa and that of Mr. Massa.

### 1. Ms. Massa.

The Court turns first to Ms. Massa. She was a schoolteacher with limited business and financial experience in general, and no experience in JDE's business or finances, until JDE's explosive growth in 2017. During 2017 she became sufficiently involved to have liability for purposes of the Trust Fund Statute, but the degree of her involvement was much less than that of Mr. Massa or Mr. Hurdle. Mr. Hurdle testified he explained the Trust Fund Statute to both Mr. and Ms. Massa, but the extent of his explanation is not clear. The emails offered to show Mr. Massa's familiarity with the Trust Fund Statute were not sent to Ms. Massa. The conversation Mr. Hurdle testified to having with Mr. Massa, offered to show Mr. Massa's conscious disregard of the Trust Fund Statute, did not include Ms. Massa. And, while Ms. Massa may have been familiar with the concept that an unpaid contractor or supplier could file a lien, and contractors or suppliers who had been paid could execute lien waivers, this does not show she understood the Trust Fund Statute's requirement that all funds be held in trust for payment of

subcontractors and suppliers.

Considering all the evidence before it, the Court cannot find ProForce has met its burden of proving Ms. Massa was aware of her fiduciary responsibilities under the Trust Fund Statute. In the absence of such awareness, the Court cannot find she had actual knowledge of wrongdoing in JDE's failure to maintain funds in trust. Further, the Court cannot find Ms. Massa engaged in reckless conduct equivalent to knowledge. The Court finds at all relevant times, Ms. Massa maintained an honest, good faith belief that subcontractors and suppliers, including ProForce, would be paid, and she worked to accomplish that result. ProForce has not shown Ms. Massa acted with the requisite mental state for liability under Section 523(a)(4). The Court will, therefore, enter judgment against ProForce and in favor of Ms. Massa on ProForce's Section 523(a)(4) claim.

### 2. Mr. Massa.

ProForce offers three grounds to support a conclusion Mr. Massa was aware of his obligations under the Trust Fund Statute and acted with the requisite intent: (1) JDE, LLC's 2013 lawsuit against Denver Protection Services, which included a Trust Fund Statute violation claim; (2) Mr. Hurdle's testimony regarding a statement Mr. Massa made to him exhibiting a conscious disregard of the Trust Fund Statute; and (3) Mr. Hurdle's and others' attempts to explain the Trust Fund Statute to Mr. Massa while the two men worked together at JDE. The Court will address each in turn.

First, the Court considers JDE, LLC's 2013 lawsuit against Denver Protection Services. Mr. Massa testified he turned the matter over to Tom Overton, a friend who was an attorney. Mr. Overton filed a complaint on JDE, LLC's behalf, asserting five causes of action: breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, promissory estoppel, and failure to pay construction trust funds. Mr. Massa testified he deferred to Mr. Overton and his associates, and he did not thoroughly review the complaint before it was filed. But even if Mr. Massa had reviewed the complaint before it was filed, there is no evidence he paid substantial attention to the legal assertions made in any of the five causes of action, must less to any specific cause of action. The matter was settled quickly, with little to no further involvement on Mr. Massa's part. The Court cannot find the 2013 lawsuit shows Mr. Massa had familiarity with the requirements of the Trust Fund Statute.

Second, the Court considers Mr. Hurdle's testimony that Mr. Massa told Mr. Hurdle that he (Mr. Massa) could avoid liability under the Trust Fund Statute by feigning ignorance of the Trust Fund Statute. At first, Mr. Hurdle testified this conversation took place in January 2018, and Mr. Hurdle was certain about the time frame because he remembered there was snow on the ground when he picked up boxes at the JDE offices. Later, after Mr. and Ms. Massa testified Mr. Massa and Mr. Hurdle were not speaking to each other in January 2018 when Mr. Hurdle picked up the boxes, Mr. Hurdle returned to the virtual witness stand to testify that the conversation took place in late August or early September of 2017, and he was certain about the time frame because he remembered he had gone to pick up boxes of files needed for 2017 taxes. Mr. Hurdle made no attempt to explain the discrepancy in his prior testimony that the conversation had happened in

6

Case:18-01403-KHT Doc#:59 Filed:09/28/20 Entered:09/28/20 07:20:11 Page7 of 8

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 18-01403 KHT

January, with snow on the ground. Mr. Massa denied such a conversation ever happened. The Court finds Mr. Massa more credible on this issue, given the inconsistencies in Mr. Hurdle's testimony about the timing of the conversation, and given Mr. Hurdle's motivation to avoid or reduce his own liability for Trust Fund Statute violations by placing blame on Mr. Massa. The Court cannot find Mr. Hurdle's testimony supports a conclusion Mr. Massa was aware of, or deliberately ignorant of, his obligations under the Trust Fund Statute.

Finally, the Court considers Mr. Hurdle's and others' attempts to explain the Trust Fund Statute to Mr. Massa while the two men worked together at JDE. Mr. Hurdle testified that he told Mr. Massa about his obligations under the Trust Fund Statute, and Scott Heasty of Taylor Kohrs also brought the Trust Fund Statute to Mr. Massa's attention. The earliest these attempts happened was May 2017. The Court cannot find at any time prior to May 2017 Mr. Massa was aware of the Trust Fund Statute's requirement to keep funds separate by project, or to hold funds in trust for subcontractors and suppliers.

At some point beginning in May 2017, Mr. Massa's understanding of the Trust Fund Statute increased. Certainly by the time of trial, Mr. Massa fully understood his obligations under the Trust Fund Statute. But, even if Mr. Massa fully appreciated his obligations before mid-August 2017, when he sold JDE to Mr. Hurdle, the Court cannot find Mr. Massa intended to disregard his obligations or acted with reckless disregard of his obligations. Mr. Massa may have acted negligently when he failed to ensure funds were held in trust for subcontractors or suppliers, but negligence is insufficient to support nondischargeability under 11 U.S.C. § 523(a)(4). For ProForce to prevail, the Court must find Mr. Massa consciously disregarded or was willfully blind to "a substantial and unjustifiable risk" that his conduct would violate his fiduciary duty. *Bullock v. BankChampaign*, 569 U.S. at 274. The risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* Here, the Court cannot so find.

This is not a case in which a corporate officer drained corporate accounts with excessive spending in a manner that would likely leave subcontractors and suppliers unpaid. Instead, this is a case in which a corporate officer believed projects would be completed and subcontractors and suppliers paid, and he made substantial efforts to accomplish that result. Beginning in May or June of 2017, Mr. Massa worked with Mr. Hurdle to break out JDE's finances by project, which the Court finds to be an effort to bring the company into compliance with its obligations. By June or July 2017, Mr. Hurdle and Mr. Massa were working to obtain financing, and when those efforts proved unsuccessful, Mr. Hurdle and Mr. Massa sought to sell the company, which the Court finds to be additional efforts to ensure subcontractors and suppliers were paid. The evidence before the Court does not support a conclusion JDE's situation was dire or hopeless at any time before the sale to Mr. Hurdle. Instead, at all relevant times prior to the sale, it appeared the company would be able to meet its obligations by the time the projects were completed. As Scott Heasty stated in his email, "I'm certain it will all shake out." Mr. Massa was receiving similar messages from Mr. Hurdle and from Mr. Scott, JDE's Director of Electrical Operations, and he believed the obligations would be

satisfied. The fact that Mr. Hurdle, an experienced CPA familiar with the company and its challenges, was willing to purchase the company was some assurance the company could be operated successfully. And while Mr. Massa could have, and should have, taken more of a hands-on approach in running his business, the Court cannot find his actions were inconsistent with those of a law-abiding person. Considering all the evidence before it, the Court finds ProForce has not met its burden of proving Mr. Massa acted with the requisite mental state for liability under Section 523(a)(4). The Court will, therefore, enter judgment against ProForce and in favor of Mr. Massa on ProForce's 11 U.S.C. § 523(a)(4) claim.

## IV. CONCLUSION

For the reasons discussed above, the Court finds ProForce has not met its burden of proving Mr. Massa or Ms. Massa acted with the mental state required for defalcation under 11 U.S.C. § 523(a)(4). The Court will therefore enter a separate judgment in favor of Debtors on ProForce's complaint.

IT IS SO ORDERED.

Dated September 28, 2020

BY THE COURT:

Kimberley H. Tyson
United States Bankruptcy Judge